McDougall, Appellant, vs. Chicago & Northwestern Railway Company, Respondent.

*December 6, 1918—January 7, 1919.*

*Master and servant: Injury to railway employee: Wrecking operations: Warning of danger: Duty of employer: Assumption of risk: Evidence: Pleading.*

1. Plaintiff, a section hand, while working in defendant's yard near a wrecking outfit, was injured by a rail which flew backward from a pile of wreckage from which a pair of trucks was being pulled by said outfit. The jury found, upon sufficient evidence, that the defendant railway company did not know, before starting to remove said trucks, that a rail was so located that it might be caught by them, and did not fail to use ordinary care for plaintiff's safety by failing to examine the wreckage to discover the rail which injured him; but it is *held* that the jury did not thereby find that there was no danger in the work which was or could have been known to defendant by the exercise of ordinary care, and that the evidence sustains further findings by the jury to the effect that the defendant failed to use ordinary care for plaintiff's safety by omitting to warn him of the dangers incident to the work, and that such lack of ordinary care was a proximate cause of the injury.

2. The work which plaintiff was doing at the time of the accident being other than his usual work and the first of its kind in his experience, and being under the direction of a vice-principal other than the one in charge of the wrecking crew, his position as to the wrecking operation was different from that of the members of the wrecking crew, and it was within the province of the jury to find, as they did, that there was no assumption of the risk by him.

3. An allegation in the complaint that "without giving the plaintiff any warning" the defendant negligently operated the derrick of the wrecking outfit so as to cause the trucks mentioned to come in contact with the rail and to hurl it toward the plaintiff, was sufficient, liberally construed, to raise an issue as to defendant's duty to warn plaintiff of the dangers incident to such work.

Appeal from a judgment of the circuit court for Ashland county: G. N. Risjord, Circuit Judge. *Reversed.*

The plaintiff, theretofore engaged at common labor and for about six weeks as a section hand by defendant, brought

an action under the federal employers' liability act for injury sustained by him July 26, 1916. A wreck had occurred just preceding that day in defendant's terminal yard at Ashland, Wisconsin, seven or eight ore cars being derailed and several of them overturned and a portion of the main track torn up and traffic on such main track being delayed. A wrecking engine with derrick, boom, and cable on a platform ahead of it, and with a crew consisting of a foreman, an engineer, conductor, brakeman, and helper, was engaged from early in the morning until the time of the accident in clearing away such wreckage.

The plaintiff with other section hands, under their own foreman, were engaged at the same time in relaying the rails, releveling the track, and retamping the ties, and clearing up the *débris* after the wrecking crew finished their part of the work. Plaintiff, who never before that day had been working around such wrecking outfit, although he had some two months' previous experience as a section hand, was at the time of the accident about twenty feet to the south of the wreckage, facing towards the wrecking outfit, and engaged in tamping ties under rails that had just been relaid on such main track. The cable from the derrick of the wrecking car was attached apparently to the axle of the last pair of trucks of the overturned or derailed cars still remaining of the wreckage, and under the direction of the foreman of the wrecking crew power was applied to the cable, and these trucks, partly covered by the iron ore and *débris* of the wreckage, were pulled for a distance of about two feet toward the wrecking derrick and in a direction away from the place where plaintiff was standing. In making such pull the man in charge of the cable perceived that there was something apparently holding back the trucks more than their mere weight and that an unexpected resistance had been met with, and thereupon shut off the application of the power to the cable. Immediately thereupon a rail swung out and around from the wreckage and flew backward in the direc-

tion in which plaintiff was standing, and in so flying struck and killed one of the men engaged on the wrecking crew and also struck the plaintiff so that he was seriously and permanently injured.

The court submitted a special verdict. The questions answered by the jury and their answers were as follows:

"(1) Did the defendant have knowledge, before starting to remove the last pair of trucks, that a rail was so located that it might be caught by said trucks? *A.* No."·

"(4) If you answer question No. 1 'No,' then did the defendant, at and before the time of plaintiff's injury, fail to use ordinary care for the safety of the plaintiff by failing to examine the wreckage to discover the rail which struck and injured him? *A.* No."

"(6) Did the defendant, while attempting to remove said truck, fail to use ordinary care for plaintiff's safety by omitting to warn plaintiff of the dangers incident to such work? *A.* Yes. (Changed by the court to 'No.')

"(7) If you answer question No. 6 'Yes,' was such lack of ordinary care a proximate cause of plaintiff's injury? *A.* Yes. (Answer stricken out by court.)

. "(8) Were the risks incident to plaintiff's employment at the time of his injury such that he assumed them? *A.* No.

"(9) The question of damages, which were assessed by the jury at $3,500.

"(10) Did the plaintiff, by lack of ordinary care on his part, proximately contribute to his injury? *A.* No."

. After motions by the respective parties the trial court changed the answers in the verdict as above indicated and thereupon directed judgment in favor of the defendant dismissing the plaintiff's complaint, and from judgment so entered the plaintiff appeals.

*William F. Shea* of Ashland, for the appellant.

For the respondent there was a brief by *Edward M. Smart,* attorney, and *R. N. Van Doren,* of counsel, both of Milwaukee, and oral argument by *Mr. Van Doren.*

. Eschweiler, J. The plaintiff moved the court, after verdict, to change the negative answers made by the jury to

questions 1 and 4, respectively, to "Yes," on the ground that such negative answers were contrary to the evidence. The court, however, denied such motion, and we think properly, as there was evidence to support such respective answers.

Having permitted such negative answers to stand to questions 1 and 4, the court then felt bound, as indicated by his written decision herein, to change the answer "Yes" to question 6 to "No," and to strike out the answer "Yes" by the jury to question 7, on the view, as expressed in his written decision, that, the jury having found that the defendant did not have knowledge, before starting to remove the last pair of trucks, that a rail was so located that it might be caught by said trucks, and by question 4 that it did not fail to use ordinary care for the safety of the plaintiff by failing to examine the wreckage, it was thereby found that there was no danger in the work that was or could have been known to the defendant by the exercise of ordinary care, and that therefore the danger that did exist and resulted in the injury to plaintiff was such an extraordinary or specific danger that there was no legal duty on the part of the defendant to warn the plaintiff, and there was therefore nothing in the record upon which to base the finding by the jury of failure to warn plaintiff embodied in questions 6 and 7 and answers thereto, and that therefore judgment must necessarily follow for the defendant. We are forced, however, to a different conclusion from an examination of the evidence in the record.

In our view of it the substantial question here was not whether this particular rail which swung around from the wreckage and caused the injury was discoverable by ordinary care, but rather whether, from the nature of the work being done, there should have been a reasonable anticipation that injury might result in the operation to any one near the place.

The foreman of the wrecking crew testified that he put the hook, which was on the end of the cable which ran from the boom on the derrick, onto this pair of trucks, which were

McDougall v. Chicago & N. W. R. Co. 168 Wis. 426.

partly covered by sand and gravel; that he could see nothing to indicate what the trucks had hold of, and that in the wreckage there had been ties and pieces of rail mixed up; that after making the cable fast to the trucks he gave the signal to the engineer and was then seeing that when they pulled back the men stood in the clear. Geelan, a section foreman and of eighteen years' experience, had charge of the crew with which plaintiff was working and testified:

"I gave *McDougall* [plaintiff] orders to stand in the clear. . . . The men were all standing aside ten or twelve feet off the main lead. There always is danger. Something is liable to break. It is well to keep out of the danger zone. And I intended that *Mr. McDougall* and the other men should keep back. We generally keep back. I told them to keep back out of the way. . . . I told the men to get into the clear, that they were going to pull. They were all there in a row. They didn't get out of the way; they got hit."

The plaintiff and other witnesses testified that no such warning or directions were given by the section foreman to them. It therefore became an issue of fact as to whether or not such warning was given, and the jury evidently adopted plaintiff's version of the transaction, and we cannot say that such a finding can be disturbed.

In passing upon this sixth question, therefore, the jury had warrant for believing that the vice-principal, Geelan, plaintiff's foreman, appreciated that there was danger incident to such work, even to men working beyond the end of the cable, from his testimony just quoted and particularly his statement that he did warn men so placed to get into the clear, and they may have believed what was his apparent view of the necessity of warning and yet have been convinced by the testimony of plaintiff and others that Geelan was mistaken in saying that he did give the warning.

The work done by plaintiff at the time of the accident being other than his usual work and the first of its kind in his experience and under the direction of a separate and distinct vice-principal from the one in charge of the wreck-

ing crew, who testified, "I did not see *Mr. McDougall* at that time [of accident]. . . . I had nothing to do with him. I didn't know him.  When I wanted a man I would go to the section foreman and ask for one," made his position substantially different as to this wrecking operation from that of members of the wrecking crew itself, and it was therefore within the province of the jury to find, as they did, that there was no assumption of the risk by him.

It is urged by respondent that question No. 6, involving the duty to warn, was not an issue presented by the pleadings. A number of alleged grounds for liability were charged by plaintiff in his complaint, upon some of which no evidence was offered and some of which, as indicated by the answers of the jury to questions 1 and 4, were found against him; but the complaint did contain the allegation that "without giving the plaintiff any warning" the defendant carelessly and negligently operated the derrick so as to cause the trucks to come in contact with the rail and to hurl it toward the plaintiff, and this should be held sufficient in view of the liberality with which pleadings are nowadays treated, and especially where, as here, the testimony having been received at the trial as to the warning claimed to have been given by defendant's foreman to the plaintiff and denied by him, the submitting of the issue raised by such testimony made such objection immaterial.

We are therefore satisfied that the trial court was not justified in changing the answers of the jury to the sixth question and in striking out the answer to the seventh, or in granting judgment for the defendant, and that there is upon the verdict as returned by the jury sufficient to require a judgment to be entered thereupon in favor of the plaintiff.

*By the Court.*—Judgment reversed, and the cause remanded with directions to enter judgment in favor of the plaintiff for the amount of damages found by the jury.